JOHNSON, C.J.
dissents in part and assigns reasons.
hi respectfully dissent from the majority’s rejection of defendant’s Brady claim.
The underlying story of this case involves two impetuous teenagers, the defendant and K.L., who had a previous romantic relationship and shared a child together. The two were immature teens, and their relationship was apparently up and down and ponsisted of frequent arguing and manipulation. On the night of July 10, 2012, defendant drove to K.L.’s residence only to find her with another male in the parking lot. Defendant entered KL.’s apartment where a struggle ensued and defendant left the apartment taking a cell phone. Defendant was eventually charged with home invasion, armed robbery and aggravated battery.
On the second day of defendant’s trial, the state disclosed for the first time that it had seized defendant’s cell phone months earlier and had downloaded all of the text messages. The state then disclosed to the defendant 635 pages of text messages which had been extracted from defendant’s cell phone. Defendant unsuccessfully moved for a mistrial (and later a new trial) based on the late disclosure of the text messages. The jury eventually found defendant guilty on the home invasion charge, and returned responsive verdicts of simply robbery and second degree battery.
In my view, the state’s late disclosure of the text messages constitutes a clear Brady violation. The state’s suppression of evidence favorable to the accused 12violates due process if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The late disclosure of such evidence may also require a reversal if the timing significantly impacted the defendant’s opportunity to effectively utilize the material. State v. Kemp, 00-2228 (La. 10/15/02), 828 So.2d 540, 545-46. There is no doubt the text messages contained exculpatory evidence, specifically related to defendant’s guilt as to the home invasion charge, and thus were required to be disclosed to the defendant pursuant to Brady. Moreover, because these messages were not disclosed until the second day of trial, defendant was not able to effectively use this evidence in *1046 his defense, requiring a reversal of his conviction.
The narrative of what happened on July 10, 2012, is told through the text messages between defendant and KL. The text messages suggest KL. orchestrated the events of that night by toying with defendant and inviting him to her residence when she was there with another boyfriend, KL. told police that she advised defendant she did not want him to come over or to see him, but the text messages sent by KL. show otherwise. The texts establish KL.’s pattern of manipulation of the defendant,' wherein she repeatedly enticed defendant to come over to her residence. KL.’s credibility was called into question when she testified that despite what was said in the text messages, she did not really want the defendant to come over, that she was just being sarcastic and joking with him, and she was playing with his mind to see what he was going to do.
These text messages were exculpatory on the home invasion charge because they demonstrate KL. wanted and invited defendant to come to her residence on the night of July 10, 2012. The messages were central to the defense that there was no “unauthorized” home invasion because K.L. invited defendant to her residence.
|sThe state’s failure to timely disclose the exculpatory evidence impacted the fundamental fairness of the prosecution as it denied defendant his right to a fair trial and due process of law. The defendant did not have access to the texts while conducting voir dire, an essential element of trial, and was further prevented from adequately preparing his defense, particularly as- to the home invasion count. The texts confirm the defendant was invited to KL.’s residence and support the physical evidence that there was no forced entry. Had the defendant been given sufficient time to prepare his defense based on the texts obtained by the state, he could have fully impeached KL.’s testimony, which was critical to the state’s case.
Further, I disagree with the majority’s finding, that the district court did not abuse its discretion in rejecting the Brady claim because the text messages were available to the defense through the exercise of reasonable-diligence. In this case, defendant specifically requested impeachment and exculpatory evidence from the State on August 21, 2012, but was never informed when the texts were obtained. Additionally, the defendant was actively looking for his phone, knowing that it held crucial evidence for his defense. The defense was never told that the state had possession of defendant’s phone or that a search warrant had been secured for the phone and access to the information on the phone.
The text messages contained concrete exculpatory evidence, specifically relating to the home invasion charge. The late disclosure of the text messages significantly impacted the defendant’s opportunity to utilize the material and led directly to defendant’s conviction. For these reasons, I would vacate defendant’s conviction and remand the matter for a new trial. See Brady and Kemp, swpra.